## Case No. 15,416.

UNITED STATES v. HUGHES et al.

[8 Ben. 29, 11 Alb. Law J. 199; 2 Am. Law T. Rep. (N. S.) 300; 21 Int. Rev. Rec. 84.] [1]

District Court, S. D. New York. Feb., 1875.

REVENUE LAWS—PRODUCTION OF BOOKS AND PAPERS—EX POST FACTO LAW.

The fifth section of the act of June 22d, 1874 (18 Stat. 178), is ex post facto, as to suits then

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission. 11 Alb. Law J. 199, contains only a partial report.]

pending for violation of the Revenue Laws of the United States, and, therefore, unconstitutional and void.
[Cited in U. S. v. Distillery No. 28, Case No. 14,966; U. S. v. Three Tons of Coal, Id. 16,515; Boyd v. U. S., 116 U. S. 636, 6 Sup. Ct 535.]

This was an action of debt to recover from the defendants [George Hughes and others] the value of certain importations of merchandise alleged to have been entered by them at the custom house in New York City, on fraudulent invoices. The suit was begun on December 16th, 1873. The defense was a general denial. On the trial of the cause, the district attorney of the United States moved, under the 5th section of the act of June 22d, 1874 (18 Stat. 178), that the defendants be notified to produce certain books and papers, specifying in the notice of motion the facts which the government expected to prove by such books and papers. The defendants objected to the issue of such notice.

Thomas Simons and Roger M. Sherman, Asst. U. S. Dist. Attys.

Sherburne B. Eaton, for defendants.

BLATCHFORD, District Judge. I have no hesitation in saying that the 5th section of the act of June 22d, 1874 (18 Stat. 178), so far as it applies to this suit, is an ex post facto law, and therefore, unconstitutional and void. The language of that section is as follows: "Sec. 5. That in all suits and proceedings other, than criminal, arising under any of the revenue laws of the United States, the attorney representing the government, whenever, in his belief, any business book, invoice, or paper, belonging to or under the control of the defendant or claimant, will tend to prove any allegation made by the United States, may make a written motion, particularly describing such book, invoice, or paper, and setting forth the allegation which he expects to prove; and thereupon the court in which suit or proceeding is pending may, at its discretion, issue a notice to the defendant or claimant to produce such book, invoice, or paper in court, at a day and hour to be specified in said notice, which, together with a copy of said motion, shall be served formally on the defendant or claimant, by the United States marshal, by delivering to him a certified copy thereof, or otherwise serving the same as original notices of suit in the same court are served; and if the defendant or claimant shall fail or refuse to produce such book, invoice or paper in obedience to such notice, the allegations stated in said motion shall be taken as confessed, unless his failure or refusal to produce the same shall be explained to the satisfaction of the court. And, if produced, the said attorney shall be permitted, under the direction of the court, to make examination (at which examination the defendant or claimant, or his agent, may be present) of such entries in said book, invoice, or paper as relate to or tend to prove the al-

legation aforesaid, and may offer the same in evidence on behalf of the United States. But the owner of said books and papers, his agent or attorney, shall have, subject to the order of the court, the custody of them, except pending their examination in court as aforesaid." It comes directly within the decisions of the supreme court of the United States, in the cases of Cummings v. Missouri, 4 Wall. [71 U. S.] 277, and Ex parte Garland, Id. 333. It is within the reasoning of those cases, and within the principles laid down in them. It is a law which, within the definition given by Judge Chase, in Calder v. Bull, 3 Dall. [3 U. S.] 386, 390,—which is a leading case on the subject, and has always been followed,—requires less testimony and different testimony to authorize a recovery, than was required when the offense was committed for which the suit is brought. It has always been held that the provisions of the constitution of the United States (article 1, § 9), that no ex post facto law shall be passed by congress, and (article 1, § 10), that no state shall pass any ex post facto law, apply not merely to criminal laws and cases, but to cases for the recovery of penalties and forfeitures. The point of contention before the supreme court in the Cases of Cummings and of Garland was in regard to the question of how far the definition of an ex post facto law extended, and whether a given provision of law amounted to the infliction of a penalty or punishment.

In the Case of Cummings, the constitution of the state of Missouri, adopted in 1865, contained a provision requiring that every priest and clergyman, in order that he might continue in the exercise of his profession in that state, and be allowed to preach or teach, should take and subscribe an oath that he never had aided the Rebellion or committed certain other designated acts, and that, if he exercised such profession without taking and subscribing such oath, he should, on conviction, be punished. Mr. Cummings, a priest of the Roman Catholic Church, was indicted and convicted in a state court of Missouri, for teaching and preaching, as a priest of that religious denomination, without having taken such oath. The case was removed to the supreme court of the United States, and that court held that the provisions of law which deprived Mr. Cummings of the privilege of acting as a priest or minister, and of preaching or teaching, imposed a penalty for some acts which were innocent at the time they were committed, and increased the penalty prescribed for such of the acts specified as at the time constituted public offenses, and in both particulars violated the provision of the federal constitution prohibiting the passage by any state of an ex post facto law; and, further, that they violated such provision of the federal constitution, by altering the rules of evidence with respect to the proof of the acts specified, and assuming the guilt instead of the innocence of the party, and requiring

him to establish his innocence by taking the oath, instead of requiring the government to prove his guilt, and declaring that he could show his innocence only by taking the oath. In all these respects the provisions of the constitution of Missouri were an ex post facto law.

To apply these principles to the present case, if the defendants do not produce these books and papers, as required by the 5th section of the act of 1874, the allegations set forth in the written motion, and which are allegations contained in the declaration, are to be taken as confessed. The defendants are obliged to produce the books and papers in order to save themselves from having a judgment entered against them. They are required by the statute to establish their innocence in this case by producing the papers, and there is only one way in which they can establish their innocence, and that is by producing the papers. That is precisely what existed in the Case of Cummings. The fact of the non-production of the books and papers is made conclusive evidence of the guilt of the defendants, unless explained to the satisfaction of the court. In respect to the acts specified in the declaration, which are set forth in the written motion, the statute alters the rules of evidence as to the proof of those acts. The language of the court in the Case of Cummings seems to me to entirely cover the 5th section of the act of 1874, as applicable to a pending suit to recover penalties and forfeitures; for I intend to limit my decision to that point, and do not intend to express any opinion about that section in its applicability to cases arising after the passage of the statute in which it is found. In the Case of Cummings, the court held that the disability imposed on the party to act as a teacher or a preacher constituted a punishment by depriving him of a right he had to exercise a lawful avocation. The court then go on to give the definition of an ex post facto law which is found in Calder v. Bull (above cited), and further say: "The clauses in the Missouri constitution, which are the subject of consideration, do not, in terms, define any crimes, or declare that any punishment shall be inflicted, but they produce the same result upon the parties against whom they are directed, as though the crimes were defined and the punishment was declared. They assume that there are persons in Missouri who are guilty of some of the acts designated. They would have no meaning, in the constitution, were not such the fact. They are aimed at past acts and not future acts. They were intended especially to operate upon parties who, in some form or manner, by action or words, directly or indirectly, had aided or countenanced the Rebellion, or sympathized with parties engaged in the Rebellion, or had endeavored to escape the proper responsibilities and duties of a citizen in time of war; and they were intended to operate by depriving such

persons of the right to hold certain offices and trusts, and to pursue their ordinary and regular avocations. This deprivation is punishment; nor is it any less so because a way is opened for escape from it by the expurgatory oath." Just so, in this case, a way is opened for escape from the consequence of not producing the books, by producing them. "The framers of the constitution of Missouri knew, at the time, that whole classes of individuals would be unable to take the oath prescribed. To them there is no escape provided; to them the deprivation was intended to be, and is, absolute and perpetual. . . . Clauses which prescribe a penalty for an act of this nature are within the terms of the definition of an ex post facto law; they impose a punishment for an act not punishable at the time it was committed."

Then followed immediately the Garland Case, 4 Wall. [71 U. S.] 333. That case arose on the provision of the federal constitution which prohibits congress from passing an ex post facto law. On the 24th of January, 1865 (13 Stat. 424), congress passed an act, providing that thereafter no person should be admitted to practice as an attorney or counsellor in any federal court, or should continue to so practice by virtue of any previous admission, unless he should first have taken and subscribed the oath prescribed by the act of July 2d, 1862 (12 Stat. 502), to the effect that he had not given aid to the Rebellion. The court held, that this operated to exclude from practising law in the federal courts all parties who had offended in the particulars enumerated; that such exclusion for past conduct was punishment for such conduct; and that, in such exclusion, the act imposed a punishment for some of the acts specified, which were not punishable at the time they were committed, and for others of the acts it added a new punishment to that before prescribed, and was thus within the inhibition of the constitution against the passage of an ex post facto law.

In its application to the present case, the 5th section of the act of 1874 seems to me to be clearly open to the objections stated in the Cases of Cummings and Garland. A suit to enforce a penalty or a forfeiture is a suit to inflict a punishment for the commission of the offence set forth in the statute counted upon in the declaration. The act of 1874 provides, that, if the books or papers are not produced, if the defendant fails or refuses to produce them, the allegations stated in the motion, and which are allegations contained in the declaration, shall be taken as confessed, unless the failure or refusal is explained to the satisfaction of the court. The only way to escape this consequence is to produce the books or papers. It will not do to say that the court must grant this motion upon the theory that the defendants will produce the books and papers, and, therefore, that the question will not arise, and that then

judgment will not pass against the defendants by confession. The act must be construed as a whole. The court must contemplate that the defendants will fail to produce the books and papers.

The question would perhaps be presented in a better form if the motion now made by the district attorney, for a notice to be issued requiring the defendants to produce the books and papers, under the 5th section of the act of 1874, were to be granted pro forma, and then the defendants were to fail to produce the books and papers. Then, when the district attorney should ask the court to take as confessed the allegations set forth in his motion, the court would, on the objection of the defendants, hold that this could not be done, because the statute is ex post facto, as applied to this case, and unconstitutional. If the defendants should produce the books and papers, no question would arise; except that, perhaps, they might produce them, and, when they were offered in evidence, might raise the objection that it was equally unlawful for the court to receive them in evidence when produced, as for the court to give judgment against the defendants by confession because of their non-production. But, it is to be assumed, that, if the defendants wish them to be excluded, they will not produce them in obedience to the notice. However this may be, it seems to me, that, in a case of this kind, where the statute, after providing for the serving of the notice, specifies what shall follow if the party fails to produce the books and papers, the court must contemplate the consequences of a failure to produce. A resort is had to this procedure with a view on the part of the government to the entire benefit supposed to exist in the statute, which is, that, if the books are not produced, the allegations are to be taken as confessed. If the notice should be issued and served, and the defendants should fail or refuse to produce the books and papers, and the district attorney should then make a motion to the court to take the allegations as confessed, I should deny the motion, upon the ground that to do so would be to enforce a provision of law that is unconstitutional and void, as being ex post facto. Whether it would or would not be more advisable to take this last course which I have suggested, is for counsel to consider. Of course, down to a certain point in the statute, there is nothing ex post facto in it. It is the penalty afterwards imposed that makes it ex post facto; and therefore, the court, when called upon to issue a notice of the kind, must contemplate the consequences prescribed in the statute. At the same time, under these circumstances, the parties being present and understanding the views of the court, such a notice will, if it shall be considered more desirable, be issued in this case, that not being regarded as a precedent for issuing such a notice in any other case.